CITY OF ST. LOUIS, *Appellant*, v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

1. **Municipal Corporation**: CITY OF ST. LOUIS: WIDENING STREET: STATUTE. Where, under the act of the general assembly amendatory of the charter of the city of St. Louis (Acts 1875, pp. 319, 321), providing for widening a street, it appears that a house or other improvement is erected and standing on the land to be appropriated, and that such house or improvement is a serious obstruction to the proposed improvement, the commissioners should assess damages both for the land to be taken as well as for the house; but if it appear that such house is not a serious obstruction they should only assess damages for the land to be appropriated subject to the right of the use of the house until it is removed or ceased to exist.

2. ———: ———: ———. Where in such condemnation proceeding the commissioners report that the improvement standing on the property should remain standing until removed by the owner or otherwise cease, the city acquires a right to the land only and not to the building thereon.

*Appeal from the St. Louis Court of Appeals.*

AFFIRMED.

*Leverett Bell* for appellant.

(1) The appraisers in the present case awarded to

the owners of the property sued for, without reference
to the projected improvement, the sum of $1,325. The
phrase here employed, "without reference to the pro-
jected improvement," means the widening of Jefferson ·
avenue, and has no reference to the building situated on
the ground taken for Jefferson avenue. And the sum
awarded is the value of the ground and building stand-
ing thereon. This follows from the fact that separate
awards for the land and the building were not made. A
lump sum was allowed for the whole estate. This sum
of money was duly received by the defendant from the
plaintiff, and thereupon the title to the said ground and
building passed from the defendant to the plaintiff.
And with the title, the right to the possession of the
premises for street purposes passed to the plaintiff,
unless the appraisers, in a lawful manner, arrested said
right. The appraisers had no power to act except in the
manner specified in the law of 1875. Unless they pro-
ceeded strictly in accordance with the terms of said
statute, any attempted action on their part will be held
invalid. In other words, they had no implied power in
the premises. The act of 1875 only provides for such
action on the part of the appraisers in cases in which
valuable houses or other improvements are erected upon
the land sought to be appropriated for the improvement,
and such house or improvement thereon shall not be
considered a serious obstruction to such proposed· im-
provement. The above are jurisdictional facts, which,
if they exist, authorize the appraisers to act, as they
attempted in the present case to act. The report, how-
ever, does not show or recite the existence of such facts,
and the testimony discloses that such facts never existed.
The sidewalk in question, by reason of the intrusion of
the building, possesses a width of two feet, when it
should have a width of twelve feet. This fact was
proven at the trial, and it is shown by the plat. A side-
walk of two feet in width is not a sidewalk. It affords

City of St. Louis v. Connecticut Mutual Life Insurance Co.

no facilities for foot passengers. And a building covering ten feet of a sidewalk is a serious obstruction and cannot be considered otherwise, and hence, under the language of the act of 1875 the appraisers were not authorized to continue in existence an obstruction of this character. (2) Furthermore, under the law of 1875, if the appraisers undertake to exercise the power here spoken of, they must fix a time for the removal of the building, in which event the use thereof remains unmolested until the time so fixed expires, or the same is removed by the owner, or otherwise ceases. In the present case no fixed time was established by the appraisers when the use of the property by the former owner should absolutely expire and terminate. The language of the award is, "we do say that the improvement now standing on the last above described property shall remain standing until removed by the owner, or otherwise ceases." This is not a compliance with the terms of the law of 1875. No date is named at which the city is to take possession. The phrase, "until removed by the owner, or otherwise ceases," is indefinite. The improvement is a substantial brick structure, and with care it may stand for the period of four hundred years. In such case it will be difficult to perceive what the city acquired under the condemnation proceedings and the payment of $1,325, less $126.19, benefits to the defendant. The view taken by the circuit judge below was erroneous, and the judgment should be reversed and the cause remanded for a new trial.

*Dyer, Lee & Ellis* for respondent.

NORTON, J. — This is an action of ejectment, instituted in the St. Louis circuit court December 18, 1882, to recover possession of the sidewalk on the west side of Jefferson avenue, running southwardly from Morgan street, in the city of St. Louis. The petition is in the

usual form.   The answer admits the incorporation of the defendant and the possession of the premises by the defendant, and denies all other allegations in the petition.

The case came on and was tried before Circuit Judge Barclay without a jury, and the following proceedings were had:

It appeared in evidence, that under proceedings taken by the plaintiff pursuant to the act of the legislature of February 22, 1875, entitled "an act amendatory and supplementary, etc.," printed in the laws of Missouri of 1875, page 319, to widen Jefferson avenue, the commissioners reported in the following words:  "That it will be necessary to appropriate a piece of ground belonging to M. H. Phelan, assignee in bankruptcy of Central Savings Bank, a corporation, bounded and described as follows, viz:  Beginning at a point in the south line of Morgan street, where the same is intersected by the west line of Jefferson avenue, as established by aforesaid ordinances, thence southwardly with said west line one hundred and forty-five feet and two and one-half inches to the north line of alley, thence eastwardly with said north line thirteen feet and ten and one-half inches, to west line of Jefferson avenue, as heretofore established, thence northwardly with said west line one hundred and forty-six feet and one-half inch to south line of Morgan street, thence eastwardly with said south line twelve feet and seven inches, to place of beginning. And we do appraise the damages to M. H. Phelan, assignee in bankruptcy of Central Savings Bank, a corporation, for their property to be taken, without reference to the projected improvement, to be the sum of one thousand three hundred and twenty-five dollars, and we do say that the improvement, now standing on the last above described property, shall remain standing until removed by the owner, or otherwise ceases."

Said commissioners also report that the benefits to

said Phelan on account of said proceedings were $126.19, and the costs were $1.98.   Said report was approved by the land commissioner on March 26, 1877, and was recorded, with the plat annexed, in the recorder's office in the city of St. Louis, on May 21, 1879.

It further appeared by the report of said commissioners, that a large number of other pieces of land having improvements thereon were also condemned for the widening of said street, and that in every instance where the buildings and improvements standing thereon were condemned by said commissioners that a finding was made of the value of the land to be taken, and a separate finding was also made of the value of the buildings and improvements standing thereon, and that the language employed in other instances of condemnation of land with improvements thereon, with the exception of the description of the land, was similar to the language hereinbefore quoted from said report with reference to the property in dispute in this action.

It further appeared in the evidence that, on November 15, 1878, the city of St. Louis paid to the defendant, the Connecticut Mutual Life Insurance Company, $1,196.83, being the amount allowed as aforesaid, less the benefits and costs above mentioned, and that on September 11, 1877, the said defendant acquired by deed a tract of ground, including the premises described in the above condemnation, by purchase at a trustee's sale, under a deed of trust which antedated said proceedings for the condemnation of said land.

It further appears that said defendant was in possession of the premises sued for in this case by his lessee, the defendant, Hanson, and that the value of the monthly rents and profits of so much of said building as stands upon the land described in plaintiff's petition, disconnected and separated from the remaining portion of said building, which stands upon the land of defendant, not in dispute in this action, was one dollar, and

that said premises were included in the property condemned as aforesaid, and the same constituted the western sidewalk of Jefferson avenue immediately south of Morgan street, and were occupied by a brick building which would be entirely destroyed if the part of it standing on said premises was removed. That the building standing on said premises is a good substantial two-story brick building, the lower part of which is constructed for a store and the upper part thereof for a dwelling house, and that it was worth at. the date of said condemnation proceedings, at least the sum of thirty-five hundred dollars, and that the monthly rental value thereof since the date of said condemnation proceedings has been thirty-five dollars, and that the officers of the city of St. Louis have made no objections to the occupancy of said premises by the defendant until the commencement of this suit. That the sidewalk mentioned is at the present time two feet in width, and when Jefferson avenue is fully improved, the sidewalk will have a width of twelve feet.

At the conclusion of the case, the court declared the law to be, that under the pleadings and evidence the plaintiff was not entitled to recover, to which action of the court the plaintiff at the time objected and excepted, and thereupon the plaintiff took a non-suit, with leave, etc. In due time the plaintiff moved to set aside the non-suit, which motion the court overruled and the plaintiff duly excepted. The plaintiff prosecuted an appeal to the St. Louis court of appeals, where the judgment was affirmed *pro forma*, and by appeal the case is before this court.

On the above state of facts, disclosed by the record, the question presented for determination is: Did the city acquire a right, not only to the land condemned, but also to so much of the brick building as stood thereon? This proposition is affirmed by the city and denied by defendant, and its solution depends upon the construc-

tion of the report of the commissioners, and the act of the General Assembly (Acts 1875, pp. 319–21), under which the proceedings were had. The said act is amendatory of the charter of the city of St. Louis, and provides for establishing, opening, widening, or altering streets, etc., in the third section of which, among other things, it is provided as follows: "In all cases in which valuable houses, or other improvements, are erected upon the land sought to be appropriated for the improvement, and such house or improvement thereon should not be considered a serious obstruction to such proposed improvement by the appraisers, they may allow damages for the land upon which such house or improvement be situated, but not for such house or improvement; or, with the consent of the party interested, fix a time for the removal thereof, in which cases the uses of the house or other improvement shall remain unmolested until the time so fixed expires, or the same be removed by the owner, or otherwise ceases."

The language employed in this act is somewhat obscure and ambiguous, but notwithstanding this, we think it may be safely affirmed that if, in a condemnation proceeding under it, to widen a street, it appears that a house, or other improvement, is erected and standing on the land to be appropriated, and that such house or improvement was a serious obstruction to the proposed improvement, the commissioners should assess damages both for the land to be taken, as well as the house, but that if it appeared that such house was not a serious obstruction, they should only assess damages for the land to be appropriated, subject to the right of the owner to the use of the house until it was removed or ceased to exist.

The report of the commissioners not only by necessary implication negatives the idea that in their judgment the house in question was such an obstruction as to require it to be taken, but it in express terms nega-

tives the idea that in estimating damages they included in their estimate the improvement then standing on the ground, for in the report they use the following language: "And we do say that the improvement standing on the last above described property shall remain standing until removed by the owner or otherwise ceases."

It is conceded that it appears from the report of the commissioners that in every instance where the buildings were condemned, a finding was made of the value of the land to be taken, and a distinct finding as to the value of the buildings and improvements thereon, and it also further appears from the report that in other cases, where condemnation was made of land having houses on it which were not taken, that the same language is used with reference to them as in the case before us. In view of this, and the further concession that the building in question was worth at the time of the condemnation proceedings, at least thirty-five hundred dollars, and that if removed it would be entirely destroyed, we are driven to the conclusion that the amount of damages assessed and paid by the city was awarded exclusively as compensation for the land to be taken, and not for the house standing thereon. I do not see how the city, under this report and conceded facts, can successfully assert a right to destroy this building for which damages were not only not allowed, but which, according to the report, was not to be taken, but was to remain standing on so much of the condemned land, as it stood, which, as I understand, was all of it except two feet left for a sidewalk. It may be, in the condition of things existing at the time of this condemnation, that, in the judgment of the commissioners, that was sufficient at that point, and that the building was not such a serious obstruction as would warrant them in taking and appropriating it, and making the city pay for it. Let this be as it may, it sufficiently appears that they did not take nor intend to

take it for the city, and whether this conclusion was wise or unwise, it is not our province to determine.

I do not believe that it was the intention of the General Assembly, in passing the act authorizing this condemnation proceeding, to exempt commissioners, in assessing damages for land to be taken, from the duty of taking into consideration the value of a house standing on it, the removal of which would utterly destroy it. If the act means that they could do this its validity in that respect might well be questioned. A more reasonable construction would be only to exempt the commissioners in assessing damages from giving damages for such houses standing on the land to be taken as could be removed without destroying or materially injuring them.

For the reasons given the judgment is affirmed. All concur.